IN THE *Circuit* COURT OF THE *First* JUDICIAL DISTRICT
OF HINDS, COUNTY, MISSISSIPPI

*Doria Smith*                                                    PLAINTIFF

NO. *20-151*

VS.

*Mississippi Emergency Management Agency*                       DEFENDANT

I, ZACK WALLACE, CIRCUIT CLERK, OF THE CIRCUIT COURT
IN AND FOR THE SAID STATE AND COUNTY DO HEREBY CERTIFY THAT
THE ATTACHED ARE TRUE AND CORRECT COPIES OF ALL THE PAPERS
FILED IN THIS OFFICE IN THE ABOVE STYLED AND NUMBERED CAUSE,
AS OF THIS DATE THE SAME IS OF RECORD IN THIS OFFICE IN DOCKET
BOOK NO. *20* PAGE NO. *151* TO WIT: *entire file*

GIVEN UNDER MY HAND AND SEAL OF OFFICE THIS THE *25*
DAY OF *March*, *2020*

ZACK WALLACE, CIRCUIT CLERK
HINDS COUNTY, MISSISSIPPI

BY _____ D.C.

CCKCTF1

Exhibit 1

## IN THE CIRCUIT COURT OF HINDS COUNTY, MISSISSIPPI
### FIRST JUDICIAL DISTRICT

**SONIA SMITH**                                         **PLAINTIFF**

**VERSUS**                       **CIVIL ACTION NO.:** 20-151

**MISSISSIPPI EMERGENCY MANAGEMENT AGENCY**            **DEFENDANT**

---

### COMPLAINT
### (Jury Trial Demanded)

---

COMES NOW, Plaintiff, Sonia Smith, in the above-styled cause, files this her complaint against Mississippi Emergency Management Agency.  The style and body, in their entirety, shall read as follows:

### JURISDICTIONAL PREAMBLE

1.   Plaintiff, Sonia Smith ("Smith" or "Plaintiff") is an adult resident of Rankin County, Mississippi.

2.   Defendant, Mississippi Emergency Management Agency (hereinafter "MEMA"), may be served with process by serving the Mississippi Attorney General, Lynn Finch, at 550 High Street Suite 1200, Jackson, Mississippi 39201.

3.   The Court has original and concurrence jurisdiction under 28 U.S.C. § 1331.

4.   The Court has personal jurisdiction over the parties to this claim.

5.   Venue is proper in this court since all actions accrued or occurred in Jackson, Hinds County, Mississippi.

## FACTS

6. Plaintiff, an older black female, was hired on April 1, 2015, as a Grants and Division Director for MEMA.

7. Plaintiff performed the duties of her job as a Grants and Division Director in a satisfactory manner.

8. Due to her job performance, on or about August 1, 2018, Plaintiff was promoted to the position of Accounting & Finance Director.  However, Plaintiff had to train her replacement, Sumar Davis, a white female, as Grants and Division Director.

9. It was promised to Sumar Davis to have dual pay for performing this job.

10. For the three months it took the Plaintiff to train Ms. Davis, she also was promised dual pay for performing her job and training or essentially doing Ms. Davis' job.

11. When MEMA determined it could not pay Ms. Davis dual pay for performing Plaintiff's former job Defendant rescinded promised dual pay from Plaintiff. See Exhibit "A"

12. On or about March 28, 2019, Plaintiff received an email invite from her supervisor Crystal Thompson, a white female, for a meeting to discuss the office of Support Service.  See Exhibit "B"

13. In the meeting, Crystal Thompson stated that an additional person would be hired on April 1, 2019.  Ms. Thompson said that none of Plaintiff's duties would change.

2

14.  On April 1, 2019, Angie Plunkett, a white female, was hired.  Her exact job position and/or duties were unknown to the Plaintiff.  Later, a position was created for Ms. Plunkett. See Exhibit "C"

15.  On or about April 15, 2019, Ms. Plunkett asked Plaintiff to come into her office.   Ms. Plunkett informed Plaintiff that all of payroll and travel department documents would be going to her instead of the Plaintiff so she could learn the process.

16.  Plaintiff asked why the change, Ms. Plunkett said it was an upper management decision.

17.  On that same day, Ms. Thompson sent emails to the entire Support Services Staff and copied both the Human Resources and Executive Staff stating effective immediately that Payroll & Travel and the entire Support Services Staff would report directly to Angie Plunkett instead of Plaintiff. See Exhibit "D"

18.  From April 15, 2019 until May 3, 2019, both Crystal Thompson and Angie Plunkett purposefully harassed and complained about the work performance of the Plaintiff.  Plaintiff was later told that MEMA intended to replace her with Ms. Plunkett.

19.  Plaintiff went to her subordinate, Edward Williams, requesting documents that it was her duty to review.  Mr. Williams stated that these documents were to be sent to Angie Plunkett instead of Plaintiff.

3

20. On or about May 3, 2019, Angie Plunkett came into Plaintiff's office asking about a copy of Mr. Williams' Performance Development Assessment (hereinafter "PDA"). Ms. Plunkett informed Plaintiff that there would be a meeting with Crystal Thompson and also to bring his PDA to the meeting.

21. Later that morning, Plaintiff received an email form Ms. Thompson stating there would be a meeting at 10:30 am. Ms. Thompson stated the meeting was to go over Plaintiff's PDA. See Exhibit "E"

22. Ms. Thompson began going over Plaintiff's PDA. Ms. Thompson graded the PDA which is incorrect via Defendant's procedure and policies.

23. Ms. Thompson stated that Plaintiff had not been doing her job very well and lacked certain job skills. Plaintiff never had a supervisor complaint or a reprimand as to her work product as of that date. Ms. Thompson gave Plaintiff two group three offenses in her Personnel file which were false. See Exhibit "G"

24. After the meeting, the Ms. Thompson sent Plaintiff home instructing her to think about what was said to her.

25. Plaintiff insisted that she be allowed to finish her work. Both Ms. Thompson and Ms. Plunkett ordered Plaintiff to leave.

26. At this time, Ms. Plunkett stated that Plaintiff would be moved to a new office near both Ms. Thompson and Ms. Plunkett. The entire rest of the office was to be moved next week.

4

27. Plaintiff returned to her office to gather her personal items and check her email. Ms. Plunkett immediately came in and demanded to escort her out of the front door.

28. On or about May 6, 2019, Plaintiff went back to work.

29. On or about May 8, 2019, Plaintiff received an email from Ms. Plunkett reminding her to move to her new office and not ask for any help to do so.

30. Plaintiff filed an United States Equal Employment Opportunity Commission (hereinafter "EEOC") claim online for employment discrimination and hostile work environment.

31. On or about May 9, 2010, Plaintiff moved into her new office.

32. On or about May 10, 2019, Plaintiff went to work but could not log into her computer.

33. Plaintiff called the IT department to report the problem.

34. Plaintiff still could not use the computer. She called IT again. Soon after, Bob Buseck came into her office to secure her computer. After asking him why, he gave no answer.

35. Plaintiff became very upset. She reported to Ms. Plunkett that she was leaving for the day. Plaintiff also filed a grievance for the May 3rd written reprimands. See Exhibit "H"

36. Plaintiffs took off from May 13 to May 14 off due to sickness from the incident. She filed her grievance letter with MEMA.

37. On or about May 14, 2019, Plaintiff received a text on her work phone from Angie Plunkett instructing her not to return to work. Plaintiff would be receiving a certified letter form MEMA in the mail. No reason was given as to her suspension.

38. On or about May 21, 2019, Plaintiff receives a certified letter from MEMA stating that she was suspended and furthermore she would get written notice of allegation against her and propose disciplinary action. See Exhibit "I"

39. On or about May 22, 2019, Plaintiff went to the EEOC to meet with an investigator. Plaintiff completed her charge form for discrimination and hostile work environment. These charges were forwarded to MEMA. See Exhibit "J"

40. On or about May 24, 2019, Plaintiff received her certified letter as to the allegation which were false and/or incorrect. See Exhibit "K"

41. On or about June 11, 2019, Plaintiff responded back to allegation via both email and certified mail. See Exhibit "L" Attached hereto is the November 27, 2018, from Crystal Thompson to Sonia and Edward Williams as to the Atkins contract. See Exhibit "M"

42. On or about June 22, 2019, Plaintiff received another certified letter stating MEMA needed additional time to respond back. There was no time frame given. See Exhibit "N"

43. On or about July 17, 2019, Plaintiff had not received a response. Plaintiff emailed both Human Resources and the Designated Representative, Stephen McCraney, demanding a response within three (3) days. See Exhibit "O"

44. On or about July 17, 2019, Plaintiff received an email from the EEOC stating that MEMA had responded to Plaintiff's allegations.

45. On or about July 20, 2019, Plaintiff received a certified letter from MEMA stating that she was terminated effective immediately. See Exhibit "P"

46. On that same day, Plaintiff reported her termination to the EEOC.

47. On or about July 23, 2019, Plaintiff filed Notice of Appeal before the Mississippi Employee Appeals Board. See Exhibit "Q"

48. On or about August 25, 2019, Plaintiff received the Charge of Discrimination for Retaliation. Plaintiff signed it on August 26, 2019. See Exhibit "R"

49. On or about November 1, 2019, Plaintiff's EAB appeal was dismissed because her allegations in the EAB appeal were the same as the allegation in her EEOC claims. See Exhibit "S"

50. On or about November 18, 2019, Plaintiff requested a right to sue letter. See Exhibit "T"

51. On or about January 3, 2020, Plaintiff received her right to sue to letter. See Exhibit "U"

52. Plaintiff has been without a job since July 17, 2019, and has been forced to live on her savings.

53.   Due to the conduct of MEMA, Plaintiff had to hire an attorney to represent and protect her legal interest and bring this suit.

54.   Prior to March 28, 2019, Plaintiff never been given a reprimand by Chrystal Thompson, given an agency PDA, given an agency Performance Improvement Plan, or even had a known complaint about her work product.

55.   Plaintiff was subjected to retaliatory conduct by Defendant's agents.

56.   Plaintiff was subjected to a hostile work environment for her opposition to Defendant's unlawful employment practices.

57.   Plaintiff was subjected to different terms and conditions of employment than similarly situated employees who have not complained about Defendant's unlawful employment practices.

58.   Defendant's conduct was willful, deliberate, malicious and/or in total disregard for the consequences.

59.   Plaintiff is a black female and of an older age.

60.   Plaintiff continues to suffer severe emotional distress and mental anguish as a result of Defendant's Actions and wrongful termination.

## ADMINISTRATIVE EXHAUSTION (TITLE VII)

61.   Plaintiff executed a timely charge of discrimination with the United States Equal Employment Opportunity Commission (EEOC) on May 22, 2019 and August 26, 2019.

62. Plaintiff alleged discrimination based on Race, Age and Retaliation in violation of Title VII in her charge of discrimination stamped as received by EEOC May 22, 2019 and August 26, 2019.

63. Defendant participated in the relevant EEOC investigation and provided information to the EEOC.

64. Plaintiff requested her right to sue letter before the end of the EEOC investigation.

65. The U.S. Department of Justice issued a Notice of Right to Sue on January 3, 2020.

66. Plaintiff has fulfilled all administrative prerequisites to filing a lawsuit under Title VII.

---

## CLAIMS

### COUNT I
### DISCRIMINATION (Title VII)

67. In order to prevent repetition, Plaintiff hereby re-alleges all the paragraphs hereinabove, incorporates them herein, and makes them a part hereof for all purposes.

68. Defendant failed to provide access to equal employment opportunities free from discrimination on the basis of race (Black), age, and retaliation in violation of Title VII.

69. As a direct and proximate result of Defendant's actions described herein, Plaintiff has suffered from a loss of income, benefits, and emotional distress.

## COUNT II
## RETALIATION (Title VII)

70.  In order to prevent repetition, Plaintiff hereby re-alleges all the paragraphs hereinabove, incorporates them herein, and makes them a part hereof for all purposes.

71.  Defendant failed to provide access to equal employment opportunities free from retaliation for Plaintiff opposing unlawful employment actions.

72.  As a direct and proximate result of Defendant's actions described herein, Plaintiff has suffered from a loss of income, benefits, emotional distress, and mental anguish.

## COUNT III
## DISCRIMINATION (42 U.S.C. §§1981 & 1983)

73.  In order to prevent repetition, Plaintiff hereby re-alleges all the paragraphs hereinabove, incorporates them herein, and makes them a part hereof for all purposes.

74.  Defendant failed to provide access to equal employment opportunities free from discrimination on the basis of race (Black), age, and retaliation in violation of 42 U .S.C. §§ 1981 & 1983.

75.  As a direct and proximate result of Defendant's actions described herein, Plaintiff has suffered from a loss of income, benefits, and emotional distress.

## COUNT IV
### RETALIATION (42 U.S.C. §§1981 & 1983)

76.   In order to prevent repetition, Plaintiff hereby re-alleges all the paragraphs hereinabove, incorporates them herein, and makes them a part hereof for all purposes.

77.   Defendant failed to provide access to equal employment opportunities free from retaliation for Plaintiff opposing unlawful employment actions.

78.   As a direct and proximate result of Defendant's actions described herein, Plaintiff has suffered from a loss of income, benefits, and emotional distress.

## COUNT V
### DISCRIMINATION (MS Code Ann. §25-9-149)

79.   In order to prevent repetition, Plaintiff hereby re-alleges all the paragraphs hereinabove, incorporates them herein, and makes them a part hereof for all purposes.

80.   Defendant failed to provide access to equal employment opportunities free from discrimination on the basis of race (Black), age and retaliation in violation of Mississippi Code Annotated § 25-9-149.

81.   As a direct and proximate result of Defendant's actions described herein, Plaintiff has suffered from a loss of income, benefits, emotional distress, and mental anguish.

11

## COUNT VI
## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

82.    In order to prevent repetition, Plaintiff hereby re-alleges all the paragraphs hereinabove, incorporates them herein, and makes them a part hereof for all purposes.

83.    Defendant's conduct was outrageous and beyond decency.    Defendant's actions directed against Plaintiff were reckless and in total disregard for a foreseeable outcome.

84.    As a direct and proximate result of Defendant's actions described herein, Plaintiff has suffered economic losses, benefits, emotional distress, and mental anguish.

## COUNT VII
## EQUAL PROTECTION  (FOURTEENTH AMENDMENT)

85.    In order to prevent repetition, Plaintiff hereby re-alleges all the paragraphs hereinabove, incorporates them herein, and makes them a part hereof for all purposes.

86.    Defendant failed to provide access to equal employment opportunities free from discrimination on the basis of race (Black), age, and retaliation in violation of State and Federal law.

87.    Plaintiff has a right to be free from disparate treatment based upon her race and age.

88.   As a direct and proximate result of Defendant's actions described herein, Plaintiff has suffered economic losses, benefits, emotional distress, and mental anguish.

## COUNT VIII
## PRIVILEGES AND IMMUNITIES (FOURTEENTH AMENDMENT)

89.   In order to prevent repetition, Plaintiff hereby re-alleges all the paragraphs hereinabove, incorporates them herein, and makes them a part hereof for all purposes.

90.   Defendant failed to provide access to equal employment opportunities free from discrimination on the basis of race (Black), age, and retaliation in violation of State and Federal law.

91.   Plaintiff was entitled to the same privileges and immunities available to individuals who were of a different race and of a younger age.

92.   As a direct and proximate result of Defendant's actions described herein, Plaintiff has suffered economic losses, benefits, emotional distress, and mental anguish.

## COUNT IX
## TORT OF OUTRAGE

93.   In order to prevent repetition, Plaintiff hereby re-alleges all the paragraphs hereinabove, incorporates them herein, and makes them a part hereof for all purposes.

94.   Defendant failed to provide access to equal employment opportunities free from discrimination on the basis of race (Black), age and retaliation in violation of state law.

95.   The aforementioned conduct committed by the Defendant is so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency.  Moreover, said conduct is to be regarded as atrocious and utterly intolerable in a civilized community.

96.   The acts and omissions which are the subject of this Count and other claims and counts set forth under Mississippi Law were part of the methods and actions of carrying out the business and to accomplish the same (regardless of whether or not the employer might be retroactively disagree with those methods on reasoned analysis).

97.   The acts and omissions subject of the State law claims herein were within the course and scope of employment and attempted to advance the employer's business or operational interest.

98.   Defendant by and through its conduct as a whole, its knowledge and constructive knowledge of the work environment, expected Plaintiff to accept the conduct, acts, and omissions, as part of the terms and conditions of employment.  Defendant's conduct was part and parcel of the terms and conditions of employment for Plaintiff to accept under the circumstances.

99.   Defendant's conduct extended well beyond insults and indignities, annoyances, and any other trivialities.  Defendant's behavior has been

malicious, willful, wanton, grossly careless, and/or reckless. Defendant Executive Directive knew of and should have known of all the facts and circumstances alleged herein.

100.   As a direct and proximate result of Defendant's outrageous conduct, Plaintiff suffered and continues to suffer significant and severe emotional distress, as well as serious damages and injuries including but not limited to loss of income, benefits, and emotional distress. Defendant's actions were reasonably likely to result in the same. Plaintiff is entitled to an award of compensatory and exemplary damages against the Defendant in an amount to be established at trial.

## COUNT X
## NEGLIGENT TRAINING, SUPERVISION, AND/OR RETENTION

101.   In order to prevent repetition, Plaintiff hereby re-alleges all the paragraphs hereinabove, incorporates them herein, and makes them a part hereof for all purposes.

102.   As a result of Defendant's failure to adequately and sufficiently train and/or supervise its employees and supervisors, Plaintiff was subjected to racial discrimination, age, gender discrimination, retaliation, and misconduct at Defendant's worksite.

103.   As a result of Defendant's failure to adequately and sufficiently train and/or supervise its employees and supervisors, it acted with reckless disregard for

Plaintiff's federal and state protected civil rights, by engaging in and/or ratifying unlawful employment practices resulting in damages to Plaintiff.

104. As a result of Defendant's failure to adequately train and supervise its employees, Defendant acted with reckless disregard for Plaintiff's federal and state protected civil rights by failing to take immediate, reasonable, or effective steps to end discrimination and retaliation and address those involved; by continuing to employ those responsible; and/or otherwise engaging in and/or ratifying, both explicitly and implicitly by its action or non-action, unlawful employment practices or unlawful conduct at its worksite.

105. Defendant negligently retained employees at its facility under circumstances in which it knew and should have known it might expose others, namely Plaintiff, to race discrimination, gender discrimination, and other unlawful employment practices and conduct. Defendant's decision to retain these employees was made after Defendant knew and should have known that Plaintiff was being subjected to discrimination and retaliation. Defendant's conduct was reckless under the circumstances and taken with total disregard for Plaintiff's protected rights and the foreseeable consequences.

106. Defendant's decisions to retain employees responsible was made within the course and scope of employment, were means of carrying out the objectives/business of employment even though improper ones. Defendant's negligent retention was motivated to serve the employer and was intentionally made. The decision occurred without regard to the civil rights,

16

legal rights, and well-being of Plaintiff.  Defendant's acts and omissions directly and proximately resulted in damages and injuries to the Plaintiff to include lost wages, benefits, and mental anguish.

107.  All torts occurred in circumstances within the course and scope of the employment by the willful acts of one or more other employees and are not compensable under the Workers' Compensation Act.  They otherwise occurred in circumstances wherein the employer is not protected by the exclusive remedy provision of the Workers Compensation Act.

**COUNT XI**
**DUE PROCESS**

108.  In order to prevent repetition, Plaintiff hereby re-alleges all the paragraphs hereinabove, incorporates them herein, and makes them a part hereof for all purposes.

109.  As a result of Defendant's failure to provide Plaintiff with rights of due process, Plaintiff was subjected to racial discrimination, age, gender discrimination, retaliation, and misconduct at Defendant's worksite.

110.  Defendant's decisions to deny Plaintiff her due process notice and opportunity to be heard prior to termination was made within the course and scope of employment, were means of carrying out the objectives/business of employment even though improper ones.  Defendant's actions and decisions were motivated to serve the employer and were intentionally made.  The decision occurred without regard to the civil rights, legal rights, and well being of Plaintiff.

111.   Defendant's acts and omissions directly and proximately resulted in damages and injuries to the Plaintiff to include lost wages, economic loss, loss of benefits, emotional distress and mental anguish.

### **PRAYER OF RELIEF**

Plaintiff requests the Court issue the following relief:

1.   Compensatory damages both pecuniary and non-pecuniary in an amount to be determined by a jury;

2.   Attorneys' fees, costs and expenses;

3.   Award such other relief to which Plaintiff may be entitled under law.

WHEREFORE, PREMISES CONSIDERED, the Plaintiff demands judgment against the Defendant for compensation damages for pecuniary and non pecuniary losses in amounts to be determined at trial; reasonable attorneys' fees and costs; and such further relief as the Court deems appropriate.

Respectfully submitted this 6th day of March, 2020.

/s/ Daniel D. Ware

DANIEL D. WARE

Attorney for Plaintiff
Daniel D. Ware, MSB#10,847
WARE LAW FIRM, PLLC
2472 US Highway 49 South, Suite F
Florence, Mississippi 39073
Telephone: (601) 845-9273
Facsimile: (601) 845-0749
dware@warelawfirm.com

Sonia Smith
Dual Pay Justification

**Previous Position Duties;**
Grants Division Director
- Directs the operations within MEMA's Support Services Grants Division.
- Supervises staff and monitor submission and accuracy of work flow through the MAGIC state system.
- Oversight of all grant funds, setting up vendors and monitoring fund balances
- Review documents for content while adhering to all state & federal guidelines.
- Preparing and submitting any required reports
- Create /closed /update grants
- Manages grant list monthly
- Manages the EMPG salary report
- Monitoring funds and financial reports daily
- Assist other department on remaining grant funds
- Provide support during the organization's annual audits and site visit

**New Position Duties:**
Accounting and Finance Bureau Director
- Plans, directs, coordinates, and supervises the work of staff in an accounting and finance department, providing technical assistance on a regular basis.
- Prepares, maintains, and verifies a wide array of fiscal documents and financial records for the agency, adhering to state and federal regulations and guidelines, as requested by DFA and other state agencies.
- Reviews and approves payments for accounts payable, travel, payroll and grants.
- Prepares internal financial reports for Executive staff.
- Assists in payment and review of EMAC and MA payments and reimbursements.
- Approves and manages time for all accounting staff.
- Assists the Office Director in the review and revision of Accounting and Finance Policy and Procedures recommending new processes as needed.
- Stands in for the Support Services Office Director in her absence to answer accounting and financial questions from Executive staff and other Agencies.



**Sonia Smith**

| | |
|---|---|
| **From:** | Crystal Thompson |
| **Sent:** | Tuesday, September 11, 2018 9:04 PM |
| **To:** | Sonia Smith |
| **Subject:** | Re: Dual Pay |

Sonia, as we discussed earlier, I will let you know when it goes into effect.  I need to get some approval work off of me and on to you for your new job.  Passing along just the approvals will free up a lot of my time and you will see will be a large part of your new position.

I will keep you posted on what I know.

**From:** Sonia Smith
**Sent:** Tuesday, September 11, 2018 8:45:53 PM
**To:** Crystal Thompson
**Subject:** Dual Pay

Hi Crystal-

Just following up to see if you contacted Denise  today about the above. If it was approved back the first of August and we are  now mid September and now she stating that she hasn't received the info from you to process.  Please keep me updated.

Thanks,

Sent from my iPhone

**Sonia Smith**

| | |
|---|---|
| **From:** | Crystal Thompson |
| **Sent:** | Thursday, March 28, 2019 10:15 AM |
| **To:** | Sonia Smith; Sumar B Davis; Nicole Pressley; Don M. Wilson |
| **Subject:** | quick gathering |

Good morning,

I need to meet with the 4 of you prior to meeting with the entire Office today.  Let's gather in the classroom at 1:30.

thanks

Crystal Thompson
Director, Office of Support Services

Office: 601-933-6603
Cell: 601-946-6844

*Click Logos Below to Stay Connected with Us:*
You

*"Preparing for Tomorrow's Disasters Today"*

1

**Sonia Smith**

| | |
|---|---|
| **From:** | Crystal Thompson |
| **Sent:** | Thursday, March 28, 2019 1:21 PM |
| **To:** | Don M. Wilson; Sonia Smith; Sumar B Davis; Nicole Pressley |
| **Subject:** | Re: Quick review prior to office meeting |

Gonna be 1:45. I'm still in with the Director meeting.

Crystal Thompson
Director, Office of Support Services
Mississippi Emergency Management Agency

> On Mar 28, 2019, at 12:19 PM, Crystal Thompson <cthompson@mema.ms.gov> wrote:
>
>
> <meeting.ics>

1



## Support Services Office

**Edward Williams**

| | |
|---|---|
| **From:** | Crystal Thompson |
| **Sent:** | Monday, April 15, 2019 11:05 AM |
| **To:** | Angela Johnson; Angie Plunkett; Dennis Stewart; Don M. Wilson; Donald McDuffey; Dorothy McGee; Edward Williams; Felisha Jacobs; George Hancock; James E. Dear; Keisha Luckett; Lenard Brent; Loretta Hollingbird; Mark Lewis; Mary Shanahan; Nicole Pressley; Rose Johnson; Shaun M. Leonard; Sonia Smith; Sumar B Davis; Susan Hardy; Visa Williams |
| **Cc:** | Clayton French; Stephen McCraney; David Huttie; Denise Gray-Hunt; Toronda Mixon; Monique Draper; William Dreher |
| **Subject:** | Department Changes |

Good morning,

Effective immediately, Felisha Jacobs will be a direct report to Angie Plunkett. Angie will work directly with Felisha on certain payroll matters. Sonia will continue to oversee Accounts Payable and Contracts. Please let me know if you have any questions.

Thanks,
Crystal

**Crystal Thompson**
Director, Office of Support Services
cthompson@mema.ms.gov
Office: 601-933-6603
Cell: 601-946-6844



*Click Logos Below to Stay Connected with Us:*



*"Preparing for Tomorrow's Disasters Today"*



**Sonia Smith <ssmith@mema.ms.gov>**                                    5/6/2019 7:09 PM

# Fwd: PDA

To sonsml@comcast.net <sonsmi@comcast.net>

Sent from my iPhone

Begin forwarded message:

> **From:** Crystal Thompson <                          >
> **Date:** May 3, 2019 at 10:10:49 AM CDT
> **To:** Sonia Smith <                    >, Denise Gray-Hunt <              >
> **Cc:** Angie Plunkett <                    >
> **Subject: PDA**
>
> Sonia,
>
> I am going to do your PDA at 10:30.  Let's all meet in my office at 10:30.
>
> thanks
>
>
>
> Crystal Thompson
> Director, Office of Support Services
>
> Office: 601-933-6603
> Cell: 601-946-6844
>
>
>
> *Click Logos Below to Stay Connected with Us:*
> You
>
>
> *"Preparing for Tomorrow's Disasters Today"*



# Mississippi State Personnel Board
## Performance Development Assessment

Revision Dates January 20, 2015

⊙ Management     ○ Non-management

## A. Demographics/Signatures

### Section 1.  Employee Demographics

| | | | | |
|---|---|---|---|---|
| ACE Id: | | | Number of People Supervised: | 3 |
| Employee Name: | Sonia Smith | | | |
| Job Title: | Accounting & Finance Director | PIN: | 0008 | |
| Agency: | Mississippi Emergency Management Agency | County: | Rankin | |
| Supervisor Name: | Crystal Thompson | | | |
| Assessment Start Date: | August | 01 | | 2018 |
| Assessment Completion Date: | April | 30 | | 2019 |

Reason for Assessment:  ○ Promotion   ○ Transfer   ○ Reallocation   ○ Reclassification

○ Resignation   ○ New Duties   ○ Annual   ⊙ Other

First Level Reviewer Signature: _____  Date: _____

The supervisor has reviewed with me the Job Duties, Individual Development Plan, Competencies and Behavioral Anchors.

Employee Signature: _____  Date: _____

Supervisor Signature: _____  Date: _____

### Section 2.  Review and Feedback Acknowledgement

Employee Signature: _____  Date: _____

Supervisor Signature: _____  Date: _____

### Section 3.  Final Assessment Rating

| 1.8 | 4   Outstanding | 2 - 2.9 Improvement Needed |
|---|---|---|
| | 3 - 3.9 Successful | 1 - 1.9 Not Demonstrated |

First Level Reviewer Signature  _____  Date: 5/3/19

Employee Signature: _____  Date: 5/3/19

Supervisor Signature: Crystal Thompson  Date: 5/3/19

I acknowledge that this assessment has been discussed with me and I do _____ do not _____ concur with this rating.

**B. Job Content** - statements which describe a distinct, major role or function assigned to a position which is a principal responsibility and which occupies a significant portion of work time.

| Job Complexity | 6. Analysis of broad problems, planning of interrelated activities |
|---|---|

Job Summary (Short statement of the role that the position plays in the agency)

This is administrative and supervisory work involving fiscal, accounting, and business service functions. Duties include the application of professional accounting principles and techniques in the analysis of the agency's functions to determine the accuracy and effectiveness of its accounting system; the supervision of the maintenance of ledgers, controls, and balances; and the preparation of fiscal statements and analyses. Emphasis is placed upon supervisory responsibilities involved in developing, implementing, and modifying the agency's accounting system. Supervision is received from an administrative superior.

Duty Statement (1 of 10)

Plans, directs, coordinates, and supervises the activities of staff in an accounting and finance department, providing technical assistance on a regular basis. Directs the operations of the staff in the accounting and finance department.

| % of Time Devoted to this Duty | 40 | How frequently is this duty performed? *(Select One)* | Consequence of Error (1-5) |
|---|---|---|---|
| ⦿ Essential   or   ○ Marginal | | Regularly | Choose One:   5 – Serious |

Duty Statement #2

Prepares, maintains, and verifies a wide array of fiscal documents and financial records for a state agency, adhering to state and federal regulations and guidelines. Directs the development, installation, and modification of accounting systems. Directs the preparation of payrolls, pre-auditing functions, and various other related accounting and clerical-accounting activities.

| % of Time Devoted to this Duty | 30 | How frequently is this duty performed? *(Select One)* | Consequence of Error (1-5) |
|---|---|---|---|
| ⦿ Essential   or   ○ Marginal | | Regularly | Choose One:   5 – Serious |

Duty Statement #3

Assists and maintains contact with agency administrators, other state agencies, and government entities. Develops and maintains financial records, reports, statements, accounting procedures and forms, and required fiscal reports for federal, state, and local authorities. Supervises fund disbursements at the state level. Assembles information for fund requirements and budgets. Supervises preparation of reports for agency programs.

| % of Time Devoted to this Duty | 20 | How frequently is this duty performed? *(Select One)* | Consequence of Error (1-5) |
|---|---|---|---|
| ⦿ Essential   or   ○ Marginal | | Regularly | Choose One:   4 – High |

Employee Initials: SS

| Duty Statement #4 | | | |
|---|---|---|---|
| Coordinates the development, review, and evaluation of the agency's cost allocation plans, federal expenditure, and assistance payments estimates, annual reports, and cost estimates on proposed program changes. Performs related or similar duties as required or assigned. | | | |
| % of Time Devoted to this Duty | 10 | How frequently is this duty performed? *(Select One)* | Consequence of Error (1-5) |
| ⊙ Essential   or   ○ Marginal | | Regularly | Choose One:    4 – High |

Employee Initials: _SS_

## C. Competency Assessment

| Public Sector Core Competencies | | | | | | |
|---|---|---|---|---|---|---|

**1. INTEGRITY** – Demonstrates a sense of responsibility and commitment to the public trust through statements and actions.

| INTEGRITY- Behavioral Anchors |
|---|

| | | | | | | |
|---|---|---|---|---|---|---|
| Models and demonstrates high standards of integrity, trust, openness and respect for others. | Yes | ☐ | ☐ | ☐ | ✓ | ☐ |
| Demonstrates integrity by honoring commitments and promises. | Yes | ☐ | ✓ | ☐ | ☐ | ☐ |
| Demonstrates integrity by maintaining necessary confidentiality. | No | ☐ | ✓ | ☐ | ☐ | ☐ |

**RESULTS FOR INTEGRITY:** 2.4

Comments:
Ms. Smith will meet directive deadlines yet does not provide accurate and quality reports. She does not respect her superiors and has no respect for authority within the Agency. She has exhibited this in emails and in person when addressing executive management and questioning executive management in front of subordinates.

**2. WORK ETHIC** – Is productive, diligent, conscientious, timely and loyal.

| WORK ETHIC – Behavioral Anchors |
|---|

| | | | | | | |
|---|---|---|---|---|---|---|
| Conscientiously abides by the rules, regulations and procedures governing work. | Yes | ☐ | ☐ | ✓ | ☐ | ☐ |
| Meets deadlines. | Yes | ☐ | ✓ | ☐ | ☐ | ☐ |
| Work product is of high quality. | Yes | ☐ | ☐ | ☐ | ✓ | ☐ |
| Sticks with assigned tasks until they are completed correctly. | Yes | ☐ | ☐ | ☐ | ✓ | ☐ |

Employee Initials: SS

| | | | | | | |
|---|---|---|---|---|---|---|
| Takes ownership of tasks and duties. | Yes | ☐ | ☐ | ☐ | ✓ | ☐ |

**RESULTS FOR WORK ETHIC:** | 1.6 |

**Comments:**
Ms. Smith works within her knowledge base however she does not take the initiative to do outside research of the laws and regulations and how she can apply them to her department. She submits requested reports by the directed dates given her but the reporting has been proven incomplete and inaccurate. She does not do in depth research in Magic or MB3 to ensure the information on the reports regarding the payments and PRs she is managing are complete and have cleared. This results in inaccurate financial reporting given to the Executive Director. This causes inaccurate planning for fiscal year end. Inconclusive reporting can cause cash flow shortage and/or overage within the Agency general funds.

## 3. SERVICE ORIENTATION - Demonstrates a commitment to quality public service through statements and actions.

SERVICE ORIENTATION – Behavioral Anchors

| | | | | | | |
|---|---|---|---|---|---|---|
| Seeks to understand and meet and/or exceed the needs and experiences of customers. | Yes | ☐ | ✓ | ☐ | ☐ | ☐ |
| Treats customers with respect, responding to requests in a professional manner, even in difficult circumstances. | Yes | ☐ | ✓ | ☐ | ☐ | ☐ |
| Develops positive relationships with customers. | Yes | ☐ | ✓ | ☐ | ☐ | ☐ |
| Gets first-hand customer information and uses it to improve products and/or services. | Yes | ☐ | ☐ | ☐ | ✓ | ☐ |

**RESULTS FOR SERVICE ORIENTATION:** | 2.5 |

**Comments:**
Ms. Smith will work with other Office Directors and Bureau Directors to get information to them when it is requested of her. When shortfalls or improvements can be made within her management pervue, Ms. Smith has proven that she will not step in and help other Support Services staff. When asked to assist the new Grants Accounting Manager with questions on prior and current reporting methods and calculations, in multiple instances, Ms. Smith referred the Grants Accounting Manager to DFA or the Magic Help portal for guidance when this was a position she was promoted from and tasked to train.

Ms. Smith did not step in and assist the Contracts Manager with ensuring that a high priority contract was submitted timely and in order so that it could be put on the monthly approval docket as soon as possible. This resulted in a missed deadline. Due to the failure of the Contracts Manager in providing all the necessary documentation, the contract did not make the Board docket and the Agency was required to enter into an Emergency contract.

## 4. ACCOUNTABILITY - Accepts responsibility for actions and results.

ACCOUNTABILITY – Behavioral Anchors

| | | | | | | |
|---|---|---|---|---|---|---|
| Is productive and carries fair share of the workload. | Yes | ☐ | ☐ | ☐ | ✓ | ☐ |
| Focuses on quality and expends the necessary time and effort to achieve goals. | Yes | ☐ | ☐ | ☐ | ✓ | ☐ |
| Demonstrates loyalty to the job and the agency and is a good steward of state assets. | Yes | ☐ | ☐ | ✓ | ☐ | ☐ |
| Maintains necessary attention to detail to achieve high level performance. | Yes | ☐ | ☐ | ✓ | ☐ | ☐ |
| Deals effectively with pressure and recovers quickly from setbacks. | Yes | ☐ | ☐ | ✓ | ☐ | ☐ |
| Takes ownership of tasks, performance, standards and mistakes. | Yes | ☐ | ☐ | ☐ | ✓ | ☐ |
| Has knowledge of how to perform one's job. | Yes | ☐ | ☐ | ✓ | ☐ | ☐ |
| Knows the organization's mission and functions and how it fits into state government. | Yes | ☐ | ☐ | ✓ | ☐ | ☐ |

**RESULTS FOR ACCOUNTABILITY:** 1.7

Comments:

Ms. Smith can work under pressure yet has not appreciated the severity of certain deadlines. This is evidenced in the failure to see the Atkins contract to completion. She does not understand the implications of MEMA having to function without the Atkins contract. The time spent without the Atkins agreement put MEMA in a position that caused the Agency to delay the completion of projects and approvals which then caused a delay in payments to the City of Biloxi. This resulted in letters written to Executive Management from the City of Biloxi accusing MEMA of causing the delay of Federal payments.

## 5. SELF MANAGEMENT SKILLS - Effectively manages emotions and impulses and maintains a positive attitude.

SELF MANAGEMENT SKILLS - Behavioral Anchors

| | | | | | | |
|---|---|---|---|---|---|---|
| Encourages and facilitates cooperation, pride, trust and group identity. | Yes | ☐ | ☐ | ✓ | ☐ | ☐ |
| Fosters commitment and team spirit. | Yes | ☐ | ☐ | ☐ | ✓ | ☐ |
| Works effectively and cooperatively with others to achieve goals. | Yes | ☐ | ☐ | ✓ | ☐ | ☐ |
| Treats all people with respect, courtesy, and consideration. | Yes | ☐ | ☐ | ☐ | ✓ | ☐ |
| Communicates effectively. | Yes | ☐ | ☐ | ✓ | ☐ | ☐ |
| Remains open to new ideas and approaches. | Yes | ☐ | ☐ | ☐ | ✓ | ☐ |

Employee Initials: ___

| | | | | | |
|---|---|---|---|---|---|
| Promotes cooperation and teamwork. | Yes | ☐ | ☐ | ☑ | ☐ | ☐ |
| Continuously evaluates and adapts; copes effectively with change. | Yes | ☐ | ☐ | ☑ | ☐ | ☐ |
| Adheres to high ethical standards. | Yes | ☐ | ☐ | ☑ | ☐ | ☐ |

| RESULTS FOR SELF-MANAGEMENT SKILLS: | 1.7 |
|---|---|

Comments:

Ms. Smith's staff has voiced recognition of favoritism to certain employees.

## 6.  INTERPERSONAL SKILLS - Shows understanding, courtesy, tact, empathy and concern to develop and maintain relationships.

INTERPERSONAL SKILLS – Behavioral Anchors

| | | | | | |
|---|---|---|---|---|---|
| Models appropriate behavior. | Yes | ☐ | ☐ | ☐ | ☑ | ☐ |
| Recognizes and develops potential in others; mentors. | Yes | ☐ | ☐ | ☑ | ☐ | ☐ |

| RESULTS FOR INTERPERSONAL SKILLS: | 1.5 |
|---|---|

Comments:

Ms. Smith does not model appropriate management behavior. When asked to assist and train the employee that stepped in to her former position, Ms. Smith was condescending and unwilling to help train that employee.  She merely referred her to read help guides in the system or to contact DFA. The treatment of the employee could have been considered borderline workplace bullying and possibly subjected the Agency to a lawsuit.

## 7.  COMMUNICATION SKILLS - Receives, attends to, interprets, and responds to verbal messages and expresses information to individuals or groups effectively.

COMMUNICATION SKILLS - Behavioral Anchors

| | | | | | |
|---|---|---|---|---|---|
| Communicates ideas, suggestions, and concerns, as well as outcomes and progress, throughout the process of an activity. | Yes | ☐ | ☐ | ☑ | ☐ | ☐ |
| Provides thorough and accurate information. | Yes | ☐ | ☐ | ☐ | ☑ | ☐ |

| RESULTS FOR COMMUNICATION SKILLS: | 1.5 |
|---|---|

Employee Initials: _SS_

**Comments:**

Ms. Smith was given an ongoing task to update and provide a status of the outstanding PR listing in MB3. Ms. Smith explained she updates the report daily and agreed to submit to her supervisor and Office Director daily. It was suggested to her by management that she add in more information and be more thorough in her research on the items. Ms. Smith's report continues to be incomplete and inaccurate. Additionally, she is not monitoring and submitting the reports daily as was discussed.

8. **SELF-DEVELOPMENT** - Adapts behavior or work methods in response to new information, changing conditions, or unexpected obstacles.

SELF-DEVELOPMENT - Behavioral Anchors

| | Review & Feedback | Outstanding | Exceeds Expected | Meets Expected | Demonstrated | N/A |
|---|---|---|---|---|---|---|
| Seeks efficient learning techniques to acquire and apply new knowledge and skills. | Yes | ☐ | ☐ | ✓ | ☐ | ☐ |
| Uses training, feedback, or other opportunities for self-learning and development. | Yes | ☐ | ☐ | ✓ | ☐ | ☐ |
| Develops and enhances skills to adapt to changing organizational needs. | Yes | ☐ | ☐ | ✓ | ☐ | ☐ |
| Remains open to change and new information and ideas. | Yes | ☐ | ☐ | ☐ | ✓ | ☐ |

RESULTS FOR SELF-DEVELOPMENT:  [ 1.8 ]

**Comments:**

Ms. Smith is proactive in signing up for all state sponsored and offered classes; however, she should be more focused on job specific courses. She is set in how things have been done in prior years that she has lost sight of asking the "why" to learn more about the process and how it could be done more effectively and efficiently.

Ms. Smith is not open to change and restructure. When she was assigned to handle the EMAC payments, she questioned and argued that the responsibility of EMAC payments has always lied with a certain position and was not open to taking the task without directly being told, again, that she will oversee it.

| Technical Competencies | Review & Feedback | Outstanding | Exceeds Expected | Meets Expected | Demonstrated | N/A |
|---|---|---|---|---|---|---|

1. **TECHNICAL PROFICIENCY** - The ability and willingness to exhibit competency in the technical areas needed to do a specific job.

TECHNICAL PROFICIENCY - Behavioral Anchors

| | | | | | | |
|---|---|---|---|---|---|---|
| Reads, comprehends, and correctly applies all rules, regulations, and policies applicable to work assignments. | Yes | ☐ | ☐ | ☐ | ✓ | ☐ |
| Performs work with a minimum amount of supervision in areas that are familiar. | Yes | ☐ | ☐ | ✓ | ☐ | ☐ |

Employee Initials: _S_

RESULTS FOR TECHNICAL PROFICIENCY:   | 1.5 |

Comments:

When tasked to complete the Subgrantee report for the Agency's GAAP report, Ms. Smith did not take the initiative to go behind and check each report to the year prior; therefore, one subgrant was left off the report. This was caught during an audit by the State Auditor's Office causing a written report against the Agency.

When preparing purchase requisition and purchase order updates, Ms. Smith did not check the status of PRs and POs in MR3 and in Magic to be sure the report she supplied was accurate. This results in incorrect budget figures provided to the Executive Director.

## 2. WORKFLOW MANAGEMENT – The ability and willingness to perform work within defined specifications and timelines and to manage conflicting priorities.

WORKFLOW MANAGEMENT – Behavioral Anchors

| | | | | | | |
|---|---|---|---|---|---|---|
| Operates under specific time constraints and within specified deadlines. | Yes | ☐ | ☐ | ☐ | ✓ | ☐ |
| Effectively prioritizes tasks in order to meet timelines. | Yes | ☐ | ☐ | ✓ | ☐ | ☐ |
| Works on appropriate priorities to get the job done. | Yes | ☐ | ☐ | ☐ | ✓ | ☐ |

RESULTS FOR WORKFLOW MANAGEMENT:   | 1.4 |

Comments:

The accounting department operates under numerous deadlines. Ms. Smith caused the Agency to miss filing the financial report for the HMEP grant with the USDOT due to not following a directive given by her Office Director. She delegated the job to a coworker without prior approval; therefore, the Agency did not meet the 12/12/2018 deadline and was notified by the USDOT that MEMA would be given an extension until noon on 12/13/2018 to provide the report or future funding could be denied.

Ms. Smith does not properly manage her time. She will take time to attend non-agency functions without ensuring that all approvals are completed by close of business before leaving.

## 3. PROBLEM SOLVING/DECISION MAKING – The ability and willingness to work with people and to identify problems in order to effectively and efficiently complete assigned tasks.

PROBLEM SOLVING/DECISION MAKING – Behavioral Anchors

| | | | | | | |
|---|---|---|---|---|---|---|
| Exhibits ability to identify and address issues that arise. | Yes | ☐ | ✓ | ☐ | ☐ | ☐ |
| Ensures that all problems encountered are addressed at the appropriate level and communicates all relevant information on a timely basis with accuracy and completeness. | Yes | ☐ | ☐ | ✓ | ☐ | ☐ |

Employee Initials: SS

| Displays the ability and willingness to work with other officers or other divisions in order to collectively complete assigned tasks or problems as they arise. | Yes | | | ✓ | | |

**RESULTS FOR PROBLEM SOLVING/DECISION MAKING:** 2.7

Comments:

Ms. Smith will handle situations as they arise; however, she will not take initiative to do so on her own.

Ms. Smith will work with other Office Directors to pull information that they ask from her.

## 4. STAKEHOLDER RELATIONS - The ability and willingness to interact and communicate effectively with stakeholders.

STAKEHOLDER RELATIONS - Behavioral Anchors

| Proactively provides stakeholders with proper information in an effort to reduce the occurrence of future problems. | Yes | | | ✓ | | |
| Acts as an advocate for agency policy. | Yes | | | ✓ | | |

**RESULTS FOR STAKEHOLDER RELATIONS:** 2

Comments:

As previously stated, Ms. Smith will provide information when asked yet is not proactive to develop on her own and without request, policy and procedures within the agency that will result in more efficient and accurate reporting and work.

| Management Competencies (to be completed for managers/supervisors) | Review & Feedback | Performance Management | Exceeds | N/A |

## 1. EMOTIONAL MATURITY - Conducts oneself in a professional, consistent manner when representing the organization.

EMOTIONAL MATURITY - Behavioral Anchors

## 2. MACRO ORIENTED - Exercises good judgment, makes sound, well-informed decisions.

MACRO ORIENTED - Behavioral Anchors

| | Yes | | | | | |
|---|---|---|---|---|---|---|
| Understands and appropriately applies procedures, requirements and regulations related to specialized areas of expertise. | Yes | ☐ | ☐ | ☑ | ☐ | ☐ |
| Understands effects of decisions on the organization and on other organizations. | Yes | ☐ | ☐ | ☑ | ☐ | ☐ |
| Acts as a change agent by initiating and supporting change within the agency. | Yes | ☐ | ☐ | ☐ | ☑ | ☐ |

**RESULTS FOR MACRO ORIENTED:** [1.7]

Comments:

Ms. Smith does not fully understand how the work performed within the Support Services office effects other Offices within the Agency. She does not understand the importance of timely approvals and submissions of contracts. If payments are not made timely, it can cause the Agency to be in violation of the Federal Cash Management agreement. This will cause the State of Mississippi to owe interest to the Federal Government for delayed processing.

Delayed contract processing causes work in other Offices to stop. This is a trickle effect and causes payments to Counties and Cities to be delayed and Federal funding jeopardized. This is evidenced, for example, in the contracts for Home and Atkins.

## 3. WORKING THROUGH OTHERS - Supports, motivates, and is an advocate for staff.

WORKING THROUGH OTHERS - Behavioral Anchors

| | | | | | | |
|---|---|---|---|---|---|---|
| Monitors workloads and provides feedback. | Yes | ☐ | ☐ | ☑ | ☐ | ☐ |

**RESULTS FOR WORKING THROUGH OTHERS:** [2]

Comments:

Ms. Smith will provide feedback on items when asked, however she does not update management on contracts. She does not ensure that the list and calendar kept on the P drive is accurate and complete. The Contracts list and Calendar on the P drive has not been updated since November 2018. This was to be done on a bi-weekly basis as agreed upon with Ms. Smith and her Contracts Manager. Ms. Smith has not monitored the processing and reporting of items in Step 7 and Step 8 of MB3. The report she provides does not include up to date information leading to inaccurate reporting to Executive Management.

## 4. RESULTS ORIENTED - Plans effectively to achieve or exceed goals, sets and meets deadlines.

RESULTS ORIENTED - Behavioral Anchors

| | | | | | | |
|---|---|---|---|---|---|---|
| Identifies, analyzes, and solves problems. | Yes | ☐ | ☐ | ☑ | ☐ | ☐ |

Employee Initials: SS

| Develops standards of performance and knows what and how to measure. | Yes | | | | ✓ | |
|---|---|---|---|---|---|---|

**RESULTS FOR RESULTS ORIENTED:**  | 1.5 |

Comments:

Ms. Smith does not do diligent research to provide accurate and up to date information in her reporting. As the Accounting Director, she should know the importance of purchasing reports and the effect they have on the Agency's cash flow. She should strive to provide more detailed information in her reporting of outstanding PRs and POs. This will ensure the Agency Comptroller has the proper information to make decisions and recommendations to the Executive Director in regards to purchasing and budgeting.

## 5. RESOURCE MANAGEMENT  - Acquires, effectively and efficiently administers, and allocates human, financial, material, and information resources.

RESOURCE MANAGEMENT - Behavioral Anchors

| Demonstrates ability to plan, prioritize, and organize. | Yes | | | | ✓ | |
|---|---|---|---|---|---|---|

**RESULTS FOR RESOURCE MANAGEMENT:**  | 1 |

Comments:

Ms. Smith has exhibited on multiple occasions the inability to properly manage her staff. She has been asked to ensure the staff's workload is even. Complaints have been given that Ms. Smith shows favoritism to certain staff. She was given a directive to cross train within her department on November 29, 2018, and this task was to be due for completion by 2/15/19. To date, this has not been completed. She was given instruction to ensure staff are properly trained and attend purchasing classes. None of the staff has attended purchasing classes to date and are not enrolled in any due to her direction. On 3/15/19, Ms. Smith signed off on a PIP for an employee with incorrect dates and for a length of time that does not fall within the guidelines of the SPB Handbook. The Employee's PIP dates have been amended and adjusted. This lack of oversight exhibits incompetency of basic SPB rules.

## D. Individual Development Plan/Performance Improvement Plan

Check appropriate plan type:

Individual Development Plan (IDP) ☐     Informal Efforts (IE) ☐     Performance Improvement Plan (PIP) ☑

| Start Period: | May | 03 | 2019 |
|---|---|---|---|
| to: | | | |
| Completion Period: | July | 31 | 2019 |

| Short Term Career Goals: To accomplish in 1-2 years. | |
|---|---|

| Long Term Career Goals: To accomplish in 3-6 years. | |
|---|---|

| Competencies/ Behavioral Anchors | Goals | Development Activities | Target Date for Completion | Evaluations/ Outcomes | Date of Actual Completion |
|---|---|---|---|---|---|
| Work Ethic Communication Skills Self Development Technical Proficiency Workflow Management | Become more proficient in Magic and study Cash Management and Budgeting | 1. Work with Accounting and Grants Director for training. 2. Do individual research for reporting in Magic. 3. Research and write a summary report on Cash Management and Budgeting. 4. Research and write a summary report on GAAP reporting to provide a clear understanding of the reporting and what it means to the State Auditor. | 7/31/2019 | | |
| Service Orientation Accountability Working Through Others | Contracts - Become proficient in the State's purchasing laws and regulations. Learn how to enter contracts in the system, learn the requirements of what documents are to be submitted for approval and show management of the status and requirements of Agency contracts. | 1. Read and submit for management a lesson in PowerPoint for MEMA staff on procurement. This is to include state procurement and federal procurement laws and how the two differ. 2. Update and keep updated the Contracts listing on the P drive and the Contracts Calendar on the P drive 3. Upload all Agency contracts on the P Drive | 7/31/2019 | | |
| Service Orientation Self Management Skills Interpersonal Skills Macro Oriented Working Through Others Resource Management | Management Education. Become a leader within the department supporting management and assisting staff and other areas when needed. | 1. Complete FEMA IS 240. 2. Provide cross training plan and restructure plan for entry and approvals (roles) in Magic. 3. Create detailed, step by step Policy and procedure for Accounts Payable researching Accounting Audit requirements under GAAP for guidelines. 4. Create daily log and task list for your position presenting daily work, status updates and PR and PO statuses to supervisor and Office Director. | 7/31/2019 | | |

Employee Initials: SS

First Level Reviewer Signature: _____ . Date: 5/3/19
Employee Signature: _____ . Date: 5/3/19
Supervisor Signature: _____ . Date: 5/3/19



**STATE OF MISSISSIPPI**
PHIL BRYANT, GOVERNOR

**MISSISSIPPI EMERGENCY MANAGEMENT AGENCY**

GREGORY S. MICHEL
EXECUTIVE DIRECTOR

TO:   Sonia Smith, Accounting and Finance Director

FROM:   Crystal Thompson, Support Services Office Director

DATE:   May 3, 2019

RE:   **WRITTEN REPRIMAND, GROUP THREE OFFENSE**

You are being issued this written reprimand for the following:

> On September 28, 2018, a directive was given to check on the Atkins Contract
> to be sure it was reviewed and submitted to the PPRB timely as the contract
> expired on 12/31/2018.  On November 29, 2019, in an Accounting and
> Finance Action Items and Review meeting, a directive was issued to "take
> ownership of items and issues brought to you and see them to closure." On
> April 18, 2019, Executive Management was informed that the Atkins contract
> would be delayed another month to June 2019.  At that point, the task was
> removed from Ms. Smith's purview and given to her supervisor, Ms. Plunkett,
> to oversee.

Your lack of follow through and management of the agency's contracts and Contracts
Manager, specifically beginning with a directive to review and follow up of the Atkins
contract beginning on September 28, 2018 and following through to the denial of the
contract to be presented to the PPRB for May 2019, constitutes a violation of Group Three,
Number 14, offense "an act or acts of conduct occurring on or off the job which are plainly
related to job performance and are of such nature that to continue the employee in the assigned
position could constitute negligence in regard to the agency's duties to the public or to other State
employees;" as stipulated in the Mississippi State Employee Handbook, § 7.1.

You may refer to your Mississippi State Employee Handbook, Chapter 8 for information
about your right to file a grievance concerning this Written Reprimand.  Additionally,
accumulation of disciplinary actions may result in demotion or dismissal. Please refer to
your Mississippi State Employee Handbook, Chapter 7 for information on accumulation of
disciplinary actions.

POST OFFICE BOX 5644 • PEARL, MISSISSIPPI 39288-5644 • PHONE: 601-933-MEMA
EMERGENCY 1-800-222-6362 (24 HOUR)
TDD 1-800-445-6362



Sonia Smith
May 3, 2019
Page Two

A copy of this Written Reprimand will be placed in your personnel file. Sign below acknowledging that you have received this Written Reprimand.

_Crystal Thompson_          5/3/19

Crystal Thompson, Support Services Office Director     Date

I acknowledge that I have received this reprimand:

_Sonia Smith_          5/3/19

Sonia Smith          Date

C: Human Resources



**STATE OF MISSISSIPPI**
PHIL BRYANT, GOVERNOR

MISSISSIPPI EMERGENCY MANAGEMENT AGENCY

GREGORY S. MICHEL
EXECUTIVE DIRECTOR

TO:     Sonia Smith, Accounting and Finance Director

FROM:  Crystal Thompson, Support Services Office Director

DATE:  May 3, 2019

RE:     <u>WRITTEN REPRIMAND, GROUP THREE OFFENSE</u>

You are being issued this written reprimand for the following:

On November 29, 2018, in an Accounting and Finance Action Items and Review meeting, a directive was issued to "review and monitor Step 7 and Step 8 in MB3. Be Prepared to answer questions on the status of any Purchase Order document or payment." On March 19, 2019, you were given a directive to follow up with Step 8 as a budget report and financial update would be given to Executive.

On April 8, 2019, a directive was given to clean up MB3 Step 7 & 8 so an accurate accounting report on cash available could be provided to the Executive Director.

Upon the review of the most recent spreadsheet submitted on April 26, 2019, multiple deficiencies were noted. If this report was used to provide a recommendation to the Executive Director, the general funds availability would be off by a minimum of $21,000.

Providing an accurate report of outstanding purchase requisitions and purchase orders is imperative in order for Executive management to make decisions and provide guidance to the Executive Director regarding year end funding.

Your lack of management ensuring that purchase requisitions and purchase orders are followed through to completion provides inaccurate information to management. The oversight can and has caused the Agency to receive collection letters from vendors and can cause the Agency to fall out of compliance with the cash management agreement between the State of Mississippi and FEMA. These acts constitute a violation of Group Three, Number 14, offense "an act or acts of conduct occurring on or off the job which are plainly

POST OFFICE BOX 5644 • PEARL, MISSISSIPPI 39288-5644 • PHONE: 601-933-MEMA
EMERGENCY 1-800-222-6362 (24 HOUR)
TDD 1-800-445-6362

Sonia Smith
May 3, 2019
Page Two

related to job performance and are of such nature that to continue the employee in the assigned position could constitute negligence in regard to the agency's duties to the public or to other State employees;" as stipulated in the Mississippi State Employee Handbook, § 7.1.

You may refer to your Mississippi State Employee Handbook, Chapter 8 for information about your right to file a grievance concerning this Written Reprimand. Additionally, accumulation of disciplinary actions may result in demotion or dismissal. Please refer to your Mississippi State Employee Handbook, Chapter 7 for information on accumulation of disciplinary actions.

A copy of this Written Reprimand will be placed in your personnel file. Sign below acknowledging that you have received this Written Reprimand.

_Crystal Thompson_                                    5/3/19
Crystal Thompson, Support Services Office Director      Date

I acknowledge that I have received this reprimand:

_Sonia Smith_                                         5/3/19
Sonia Smith                                            Date

C: Human Resources

### MISSISSIPPI STATE PERSONNEL BOARD
### GRIEVANCE FORM

| Agency MEMA | Date 5/10/19 |
|---|---|
| Name Sonia Smith | Job Classification |
| Mailing Address 207 Laurel Oaks Ive | Telephone Number(s) 601-594-J868 |

**GRIEVANCE STATEMENT** *(Include identity of grievant and witnesses, if any.)*

See attachment

**RELIEF SOUGHT**

— For PDA & Reprimands to be exhart
— To not have to work in a hostile environment
— To Not have to ~~enforce~~ deal w/ harassment.

| Grievant's Signature: | Sonia Smith |
|---|---|

**STEP ONE: Decision of Immediate Supervisor**

| Supervisor's Signature | |
|---|---|
| Date | |
| Employee Answer | I am satisfied with the answer to my grievance. |
| | I am not satisfied with the answer to my grievance and wish to have it advanced to the next step. |



| STEP TWO: Reply to Employee Grievance, Next Level of Management | | |
|---|---|---|
| | | |
| Supervisor's Signature | | |
| Date | | |
| Employee Answer | | I am satisfied with the answer to my grievance. |
| | | I am not satisfied with the answer to my grievance and wish to have it advanced to the next step. |
| STEP THREE: Agency Decision | | |
| | | |
| Signature | | |
| Date | | |

formal grievance can _____ Date

-Grievance letter for a hostile work environment
+ ~~harassments~~ harassment.
~~-~~ grievance should highlight the what, the who the
where & the when.


On May 3, 2019 I was called into a meeting
to discuss my PDA (Performance Development
Assessment) with Crystal Thompson ~~as~~ (former
supervisor from August 1, 2018 - March 31, 2019
Angie Plunkett (current supervisor as of April 1, 2019)
~~the this~~ this PDA was dated August 1, 2018, April 3, 2019
(which is the first Performance Development
Assessment done since starting this position as
Accounting for ~~the~~ Finance Director. This PDA also
included a grading scale which according to
the MS State Personal Board a PDA must
~~be given it ups from ~~timo~~ ~~from Hall~~ be
held between the supervisor & employee w/in
~~fourteen days~~ (14) days. Crystal Thompson has never
~~complete~~ a PDA done since the starting 12/11/17 5/3/19
* A valid assessment cannot be done on an employee
who has not been ~~g~~ functioning under the
specified assessment for at least 90 days.


Also, I was written up under a group 3 offense
which are false statements for both reprimands
with wrongful info written in the letter.

Page

Date

In the grievance complaint letter, I am establishing facts whereby a combination of factors are the cause/reason for this grievance

Dear HR,

I am writing a grievance letter to invoke the grievance procedure, due to a "reasonable belief that MEMA has breached its statutory duties w/ its new working environment.

I would like to

I'd also to include that I experience harassment at the @ the end of my meeting with Crystal Thompson & Angie Bleylock. After the meeting of only going over my PDA (which was a null & void) due to looking at my initial PDA, I received going on written reprimand (which @ I am being accused of false information on letters). I was told that they were directive to make me leave, work after going over this much reprimand and I had no other choice. I asked and why am I leaving. Angie indicated to think about what they said on the first written reprimand I then indicated that I had work to be done & they indicated again that @ they were directive to make me leave. I @ then asked

Page

| Date | |
|------|---|
| 7:00 | ☑ **Action Items** |
| 7:30 | When this Street transporting - where you have |
| 8:00 | someone to leave. I who did not do anything |
| 8:30 | but sat in a meeting, took notes & listen what |
| 9:00 | they had to say. They indicated don't ask no |
| 9:30 | question just leave ☐ O I went back to my |
| 10:00 | office to start gathering my belongings & |
| 10:30 | cleaning down my computer |
| 11:00 | that Angie came to my office w/ in 3-5 |
| 11:30 | minutes & said she Elvis directive to |
| 12:00 | come escort me to the front door to leave the |
| 12:30 | building. I was   **Follow-up calls** |
| 1:00 | in total shock, embarrassed because she said |
| 1:30 | it in front of another co-worker who was |
| 2:00 | standing in my office talking to me. I then |
| 2:30 | said excuse me. Angie stated she was |
| 3:00 | directive to escort me to leave |
| 3:30 | of the building. I asked Angie Plunkett why |
| 4:00 | to why you have to escort me. |
| 4:30 | to kitched the front. having a meeting to go over |
| 5:00 | |
| 5:30 | again I was embarrassed & humiliated & I |
| 6:00 | was not cause for |
| 6:30 | |
| 7:00 | Walking under Crystal Thompson management |
| 7:30 | leadership has become working in a hostile environment |
| 8:00 | & Angie Plunkett has come aboard following under |
| 8:30 | Same leadership towards harassing |
| | me. |

Date _____

I have begun to notice unfair treatment since
Angie Nichlott started _____ in April 30
_____

I haven't been able to work those concerns out
here @ MEMA after talking to several people, so
I would like to request that a mediation team
SPB intervene. I feel like a neutral party would
be able to look at situations going on here
@ MEMA & hope to resolve the problems going
on within the agency.

Hostile work environment

harassment

Page _____



### STATE OF MISSISSIPPI
PHIL BRYANT, GOVERNOR

### MISSISSIPPI EMERGENCY MANAGEMENT AGENCY

GREGORY S. MICHEL
EXECUTIVE DIRECTOR

May 20, 2019

Sonia Smith
207 Laurel Oak Cove
Brandon, MS 39047

*Via US Mail*
### SUSPENSION WITH PAY

Dear Sonia Smith,

Pursuant to Chapter 7.2 of the Mississippi State Employee Handbook, in extraordinary circumstances, the Mississippi Emergency Management Agency may suspend an employee with pay. Pursuant to this provision, you are immediately suspended with pay.

By separate correspondence, you will receive written notice of the allegations against you, and the proposed disciplinary action which may be taken. The notice will state the date, time and location for a conference for you to have the opportunity to respond and present a defense to the allegations prior to a final action being taken. This conference will take place within twenty (20) working days from today. The notice will also give you instructions concerning reporting for the conference and inform you that you may respond in writing to the allegations and/or waive the conference.

You are directed not to return to work or any agency location unless you are given official written notice to do so. You are directed not to engage in any activity on behalf of the agency, including use of your work email account. Please contact Ms. Denise Gray-Hunt at 601-933-6391 if you have any questions or concerns.

Sincerely,

Stephen C. McCraney
Agency Designated Representative

pc:    Human Resources

FILED
OCT 08 2019

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act. Statement and other information before completing this form. | ☐ FEPA<br>☒ EEOC | 423-2019-01262 |

EMPLOYEE APPEALS BOARD

null
_State or local Agency, if any_                                                              and EEOC

| Name (indicate Mr., Ms., Mrs.) | Home Phone | Year of Birth |
|---|---|---|
| Ms. Sonia M Smith | (601) 594-4868 | 1971 |

| Street Address | City, State and ZIP Code |
|---|---|
| 207 Laurel Oak Cove, BRANDON, MS 39047 | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (If more than two, list under PARTICULARS below.)

| Name | No. Employees, Members | Phone No. |
|---|---|---|
| MS EMERGENCY MANAGEMENT AGENCY | 101 - 200 | (601) 933-6362 |

| Street Address | City, State and ZIP Code |
|---|---|
| 1 MEMA Dr., PEARL, MS 39208 | |

| Name | No. Employees, Members | Phone No. |
|---|---|---|
| | | |

| Street Address | City, State and ZIP Code |
|---|---|
| | |

DISCRIMINATION BASED ON (Check appropriate box(es).)

| | DATE(S) DISCRIMINATION TOOK PLACE |
|---|---|
| ☒ RACE   ☐ COLOR   ☐ SEX   ☐ RELIGION   ☐ NATIONAL ORIGIN | Earliest: 03-01-2018   Latest: 05-22-2019 |
| ☐ RETALIATION   ☐ AGE   ☐ DISABILITY   ☐ GENETIC INFORMATION | |
| ☐ OTHER (Specify) | ☒ CONTINUING ACTION |

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

I was hired April 1, 2015 as a Grants and Division Director. On August 1, 2018, I was promoted to the position of Accounting & Finance Director. On a continuous basis, I am being harassed by the Director of Office of Support Services who is a White female. I am being subjected to different terms and conditions of employment and I am being paid disparate wages. On May 3, 2019, I received unwarranted reprimands and was given a low job performance evaluation.

Although I have complained and filed an internal grievance, nothing has been done to address my employment issues.

I believe I am being discriminated against because of my race (Black) in violation of Title VII of the Civil Rights Act of 1964 as amended.

My employer removed several of my job duties and gave them to a less senior White female and upon information and belief, she is earning higher wages. I believe that the White female is being groomed to take my position. Whites are being treated more favorably and are not being subjected to a hostile work environment.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT |
| Digitally signed by Sonia Smith on 05-22-2019 11:25 AM EDT | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (month, day, year) |

**STATE OF MISSISSIPPI**
PHIL BRYANT, GOVERNOR

## MISSISSIPPI EMERGENCY MANAGEMENT AGENCY

GREGORY S. MICHEL
EXECUTIVE DIRECTOR

May 22, 2019

Sonia Smith
207 Laurel Oak Cove
Brandon, MS 39047

### PRE-DISCIPLINARY CONFERENCE NOTICE

Dear Ms. Sonia Smith:

A pre-disciplinary conference is scheduled for you on June 11, 2019, at 10:00 am, at The
Mississippi Emergency Management Agency, 1 MEMA Drive, Pearl MS 39288 in the
Governor's Conference Room. At that time, you will be given the opportunity to respond and
provide a response to the following allegations:

On May 6, 2019, Ms. Crystal Thompson received an e-mail notification on the agency e-
mail system that you had forwarded a meeting invitation to Sonsmi@comcast.net. She
notified the IT staff and asked if there was a way to see if other state information was sent
to her personal e-mail.

May 10, 2019, at approximately 9:30 am I was notified by IT staff that you had been
sending e-mails from your work e-mail (ssmith@mema.ms.gov) to your personal e-mail
account (sonsmi@comcast.net). This activity was documented from May 6, 2019, to
May 9, 2019. Approximately one hundred and eleven (111) e-mails were documented as
being sent during these 4 days. At approximately 9:29 am, I directed the IT staff to
lockdown and seize your work computer.

Given the fact that you forwarded Agency specific business information to your personal
e-mail for over four days, the Agency took preventive and protective measures to check
your computer and e-mail for issues to confirm or deny that any documents, data, and
other information had been compromised. After an evaluation, it was confirmed that you
sent multiple state documents to your personal e-mail account over a period of 4 days.
These emails included MEMA grant information as well as personal financial
information. You originally had access to confidential Agency information, including
but not limited to personal information, payroll records, and vendor information. This is
in direct violation of Mississippi State Employee Handbook, Chapter 5.12, EMPLOYEE

Sonia Smith
May 22, 2019
Page 2

USE OF STATE PROPERTY. Forwarding Agency-specific business information and personal information constitutes unauthorized use or misuse of State property or records; an act or acts that to continue the employee in the assigned position could constitute negligence regarding the Agency's duties to the public or other State employees; and is a breach of Agency security and confidentiality.

These violations constitute Group Three offenses in the following areas: Number 12, "the unauthorized use or misuse of State property or records;" Number 14, "an act or acts of conduct occurring on or off the job which are plainly related to job performance and are of such nature that to continue the employee in the assigned position could constitute negligence in regard to the agency's duties to the public or to other State employees;" and Number 18, "a breach of Agency security or confidentiality;" as stipulated in the Mississippi State Employee Handbook, § 7.1.

I will also consider the two Group Three Offenses and Performance Improvement Plan you received on May 3, 2019, in this due process meeting.

The May 3, 2019, Group Three offenses are as follows:

1.   On September 28, 2018, a directive was given to check on the Atkins Contract to be sure it was reviewed and submitted to the PPRB timely as the contract expired on 12/31/2018. On November 29, 2019, in an Accounting and Finance Action Items and Review meeting, a directive was issued to "take ownership of the items and issues brought to you and see them to closure." On April 18, 2019, Executive Management was informed that the Atkins contract would be delayed another month to June 2019. At that point, the task was removed from Ms. Smith's purview and given to her supervisor, Ms. Plunkett to oversee.

Your lack of follow through and management of the Agency's contracts and Contracts Manager, Specifically beginning with a directive to review and follow up of the Atkins contract beginning on September 28, 2018 and following through to the denial of the contract to be presented to the PPRB for May 2019, constitutes a violation of a Group Three, Number 14, "an act or acts of conduct occurring on or off the job which are plainly related to job performance and are of such nature that to continue the employee in the assigned position could constitute negligence in regard to the agency's duties to the public or to other State employees;" as stipulated in the Mississippi State Employee Handbook §7.1.

2.   On November 29, 2018, in an Accounting and Finance Action Items and Review meeting, a directive was issued to "review and monitor Step 7 and Step 8 in MB3. Be prepared to answer questions on the status of any Purchase Order document or payment." On March 19, 2019, you were given a directive to follow up with Step 8 as a budget report, and financial update would be given to the Executive.

On April 8, 2019, a directive was given to clean up MB3 Step 7 & 8 so an accurate accounting report on cash available could be provided to the Executive Director.

Sonia Smith
May 22, 2019
Page 3

Upon the review of the most recent spreadsheet submitted on April 26, 2019, multiple deficiencies were noted.  If this report were used to provide a recommendation to the Executive Director, the general funds' availability would be off by a minimum of $21,000.

Providing an accurate report of outstanding purchase requisitions and purchase orders is imperative in order for Executive management to make decisions and provide guidance to the Executive Director regarding year-end funding and effective execution of State funding.

Your lack of management, ensuring that purchase requisitions and purchase orders are followed through to completion provides inaccurate information to management.  The oversight can and has caused the Agency to receive collection letters from vendors and can cause the Agency to fall out of compliance with the cash management agreement between the State of Mississippi and FEMA.  These acts constitute a violation of a Group Three, Number 14, "an act or acts of conduct occurring on or off the job which are plainly related to job performance and are of such nature that to continue the employee in the assigned position could constitute negligence in regard to the agency's duties to the public or to other State employees;" as stipulated in the Mississippi State Employee Handbook §7.1.

If these allegations are found to be accurate, your actions constitute Group Three offenses in the following areas during May 6th through the 10th, 2019, Number 12, "unauthorized use or misuse of State property or records;" Number 14, "an act or acts of conduct occurring on or off the job which are plainly related to job performance and are of such nature that to continue the employee in the assigned position could constitute negligence in regard to the agency's duties to the public or to other State employees;" and Number 18, "a breach of Agency security or confidentiality;" as stipulated in the Mississippi State Employee Handbook, § 7.1. Possible disciplinary actions for committing a Group Three offense are a Written Reprimand and/or Suspension without Pay for up to thirty (30) working days, Demotion or Termination.

You may also respond to these allegations in writing. Any written response should be sent to my attention, at the Mississippi Emergency Management Agency, P.O. Box 5644, Pearl MS, 39288, or by e-mail at smccraney@mema.ms.gov or fax number (601) 933-6810, and must be received no later than June 11, 2019, at 9 am.  You may also waive this pre-disciplinary conference in writing. A statement waiving attendance at the pre-disciplinary conference should be sent to my attention at the same address, e-mail or fax number. After considering your response, if any, you will be notified of the final decision in this matter.

Sincerely,

Stephen C. McCraney
Agency Designee

Sonia Smith <soname@comcast.net>                                             6/11/2019 12:31 AM

## Grievance Response Statement

To smccraney@mema.ms.gov • dhunt@mema.ms.gov

Good Evening-

Please find my attached statement in regards to the allegations.  I have attached a copy for your review as well as put one in the mail(certified) that you will be receiving as a hard copy for your records.

Due to the stress I have incurred from embarrassment, harassment and a hostile work environment from Crystal Thompson and Angie Plunkett, I decided to send statement via email/mail for your review, which are options listed on letter instead of coming in to talk in person.

Best Regards,

Sonia Smith

> • Grievance Letter Statement.docx (303 KB)



June 5, 2019

To: Stephen McCraney
    Denise Gray-Hunt (Bureau of Human Resources)

Dear Mr. McCraney-

I would like to start by saying that I respectfully disagree with the
information on the Pre-disciplinary conference notice. Also, the PDA
that was graded is null and void. Please refer to the MS State Personnel
Board Handbook, which states that an initial assessment PDA shall be
made before a graded PDA can be completed. I wasn't given an initial
PDA from when I took this position on August 1, 2018 from Crystal
Thompson stating what my expectations were in this job. Crystal
Thompson has been in this position since December 1, 2017 and has
never given me a PDA.

Please see my statements below on each incident.

**Atkins Contract:**



An email chain was generated on 9/28/2019 by ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ that
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Then
Crystal Thompson came back and replied to email stating that Clayton
mentioned something to her that they may not make it in time. Then I
(Sonia Smith) checked with Edward and he replied to all of us in an
email on 10/1▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
timely▮ process. ▮▮▮▮ before
the process would be complete to send it the ▮▮▮▮▮▮▮▮ the
December meeting. He also stated in the ▮▮▮▮▮▮▮▮▮ been
8 day period from the time the contract expires and the board meeting
in January to have a new contract in place. He is ▮▮▮▮▮▮▮▮▮▮ to
the calendar to meeting that was provided. ▮▮▮▮ noted that
they couldn't make the earlier deadline for the December meeting
because the purchasing process would not be completed.

The ad went out and (2) bids came in. I (Sonia Smith) received one bid
from Don Wilson, who was working the receptionist desk the day it
came in and he gave it to me as I was returning from lunch. On 11/9/18
in an email conversation, I asked Crystal what she wanted me to do with
the bid. She responded back on 11/13/18 and indicated that I could put
the bid package in her office or I could go to her office and get bid
package that she had that came in on 11/8/18. She also stated that if I
wanted to check the timeline and see what we needed to do next, would
be good. I then went and picked up bid out of her office and came back
to my office. After looking at the timeline, I open the bids and started
going through them to see how much each bid came in as. After going
through the bids I notice that the RCL bid didn't have a total cost for all
(3) years. It had just one amount which I thought wasn't right. I then
emailed the contact person on the bid of RCL and also called and left a
voice mail to let them know to give me a call regarding the bid. After
speaking with someone from RCL and confirming the bid total I went to
Crystal's office to let her know according to the bids submitted that RCL
came in lower than Atkins. Within a few minutes Clayton walked in as
we were discussing the bid and Clayton stated that's fine, he would look
over the bids and take it from there. So, I then asked Clayton are you
saying you will handle the bids from here and Clayton said yes and
Crystal said are you sure and he indicated yes again. So, Clayton came to
my office and picked up both bids from me and took it from there. I
never did hear anything back from Clayton regarding the bids and
within two weeks Edward Williams was returning back to work. Crystal
sent an email out to me, Edward & Randall on 11/27/18 @ 12:03p.m.
Giving Edward an update on what had transpired while he was out. One
of the bullet points below is from the email she sent regarding the
Atkins contract.

Per Crystal's email:
- The Atkins contract came in and Sonia reviewed them. Atkins did
  not win on price but Clayton said they would be disqualified for
  not meeting the qualifications. I believe Sonia gave all that to
  Clayton.

Clayton was handling both and indicated he would review both bids and
were to determine if RCL meet the minimum qualifications. Clayton

summarized why RCL did not meet minimum qualifications. Edward then sent letter to RCL informing them that they did not meet minimum qualifications. After letter was sent, the waiting process begins until RCL responded which was 8 days after they were informed. Then on 12/20/18, Edward received an email from Ben Plaia, Attorney for RCL stating they would like to protest. Edward then passes this info on the Randall, Clayton, Crystal and myself (Sonia). Randall then drafted a letter, which never did go out to RCL. After that Randall was dismissed from MEMA. Then Edward had to wait until an attorney was hired which was February 15, 2019. The new attorney (William Dreher) reviewed the old letter then drafted a new letter & sent out to RCL on March 19, 2019. RCL responded back to the William Dreher and said they would be dropping protest, and the attorney told Edward that they decided to not move forward and that the protest was being dropped.

Edward then tried to submit the bid for approval for the Atkins contract; however because of an error by Randall Saxton (previous attorney) he was not able to submit the bid for approval and the procurement process had to be re-done.

And this was the reason the Atkins contract was delayed for the longer period of time.

In conclusion, I followed through on this contract from the time the bid came in and up until Clayton & Crystal indicated that Clayton would handle it. When Edward returned (11/27/18) he and I discuss this contract on a daily basis and he kept me informed of what was going on and I kept abreast of what was transpiring while the protest was going on as well. Clayton took both bids and said he would do all the legwork and when Edward returned he finished the process along with the Mitigation Horne Contract and did a great job. Everything seemed fine by Crystal when I took the initiative to open the bids, go through them and make contact with the necessary bidders to figure out the bid amounts to move forward on the contract while Edward was out. Also, Shaun and I worked on the Mitigation contract and worked with DFA on making sure it was in the system that I had to approve. She made the remark, "thanks for getting all this done" now all of a sudden months later and after April 1, 2019 (when Angie Plunkett) was hired, Crystal and Angie came up with false information to use in my written

reprimand stating that I didn't follow through with the contract that was in protest for several months and that my lack of management of the agency contract would constitute a violation of a group 3 offense. Edward and I both worked on this contract. I handled the contract from the time it came in up until Clayton said he would handle the rest and when Edward returned I caught him up verbally on what had taken place while he was out. He took it from there after he returned on November 27, 2018. He did a great job in jumping in and bringing everything up to par until the protest and even after RCL decided to drop the protest. Since RCL drop the protest, Edward and I have keep abreast as to what was going on. The (2) reasons the Atkins contract were delayed: First, there was a protest that was filed and we could not proceed until the protest was resolved. Second, due to a procedural error by Randall Saxton (attorney at one time) we couldn't move forward for approval for June 5 board meeting. Crystal and Angie got together and found things that they could nick-pick and write me up on without ever communicating that they had issues with my job performance, the Atkins contract (which I worked on along with the Mitigation contract) or anything else. Edward and I communicated on this contract the entire time the protest was going on a weekly basis.

**Steps 7 & 8:**

May 3, 2019 regarding MB3 steps & 7 & 8 written reprimand is inaccurate and false.

The process of how step 7 works:

When the PR reaches step 7 a Purchase Order (PO) is processed for the goods and/or services. The Purchase Order does not move out of step 7 until all of the approvals have been completed, if there are no issues (which could be a vendor issue, assets shell issue, funding issue or General Ledger (GL) issue) just to name a few. When the approved PO is received back, it's then moved to step 8, which is the holding/processing area.

The process of how step 8 works:

There are several things that have to occur before you can move a PR from Step 8 to step 9(completion).

1. The goods and/or services have to be received.
2. Once the goods and/or services have been received, Mark has to MIGO (this is verifying that the items have been received).
3. Then the invoice(s) have to be received (not a quote).
4. Once the items/services & invoice(s) have been received, then you process for payment.
5. Once it's processed for payments and all (3) levels of approvals are received then you wait until DFA have approved the pay documents before they are moved to step 9.

This process may take longer due to items not being received, invoice(s)not coming in a timely manner and adjustments having to be made, which cause the PO then to go back through the approval process before it can be paid.

Therefore, on the reprimand written May 3, 2019 regarding steps 7 & 8 I disagree with Crystal's write up. The PR spread sheet started a few months back and never has Crystal complain one time about it being inaccurate to receive a write up. In regards to the information she put on the reprimand that upon review of a report submitted on April 26, 2019 multiple deficiencies were noted. I saw (4) on spreadsheet that they made a comment next too what I had sent them on my spreadsheet, which was very minor, and (1) one that I wasn't even aware of.

Crystal mention in reprimand about PR#14041 - On the spreadsheet I submitted I indicated in my status field that DFA approved on 4/26. She came back and said it was inaccurate because DFA approved it on 4/26 @ 8:43 and it shouldn't have been on the list. I told Crystal that wasn't the first time I have put DFA approved on the spreadsheet and wasn't a big deal made of it. I also said I put DFA approved letting her know that this has been finalized on DFA end and I don't move it off the list until the next day once Visa Williams get the warrant list from DFA and she goes in and move it to step 9 and make a note on PR as complete. This is done because sometimes issues have happen with DFA system causing the document to be logically deleted for some reason and we would have to go back in and re-approve the document. She then indicated

that because that one PR was not moved from the spreadsheet it made the report that she submitted to the Executive director was off by that amount. Due to PR system changing from moment to moment, it should not be an accurate tool to use to track the budget report. The MAGIC system should be the tool used to look at items that have been encumbered to determine a more accurate budget because steps 7 & 8 changes so frequent. All Crystal had to do was send me an email saying can you go ahead and move this PR to step 9 instead of waiting until Visa move it. It wouldn't have been a problem but instead Crystal and Angie got together and tried to find things to write me up on that were very minor. They nick-pick until they came up with something that wasn't even necessary.

**Email information:**

In the pre-disciplinary conference notice I received from MEMA on May 22, 2019 indicates that on May 6, 2019 Crystal Thompson said she received an e-mail notification on the agency email system that I (Sonia Smith) forward a meeting invitation to my personal email sonsmi@comcast.net. Crystal Thompson then said she notified the IT staff and asked if there was a way to see if other state information was sent to Sonia Smith personal email.

Then on May 10, 2019 Stephen McCraney said at 9:30a.m. he was notified by IT staff that I (Sonia Smith) had been sending emails from my work email ssmith@mema.ms.gov to my personal email of sonsmi@comcast.net. It was also indicated in the letter that this activity was documented from May 6-9 2019 and that approximately one hundred and eleven (111) emails were documented as being sent during these 4 days. The statement wraps up to say that at 9:29a.m. Stephen McCraney directed IT staff to lockdown and seize my work computer.

My responses to your statement is that I didn't send one hundred eleven (111) emails to my personal email address sonsmi@comcast.net from my work email of ssmith@mema.ms.gov. Also, that on May 6, 2019 I didn't forward a meeting invitation to my personal email sonsmi@comcast.net. I would like this information to be shown to me

where I forward this invitation form ssmith@mema.ms.gov and where I
sent one hundred eleven (111) emails to my personal email address
sonsmi@comcast.net.

It was also indicated that during those four days of May 6-9 2019 that it
was confirmed that I sent to my personal email address
sonsmi@comcsat.net personal information and grant information. I
would like this information shown to me as well.

I'm prepared to hire a forensic computer person to come in and check
my personal computer and MEMA's computer to show that I didn't send
an invitation to my personal email of sonsmi@comcast.net on May 6,
2019 and that I didn't send one hundred eleven (111) emails to my
personal computer between May 6-9 2019.

I would like to wrap my response up by saying that Crystal and Angie
got together and put inaccurate information in the reprimands and tried
to find some error so they could write me up.  Crystal stated false
information on the PDA that is null and void.  I also would like to say
that at the end of the meeting I was harassed and embarrassed which
was uncalled for.  As I was about to leave Crystal's office, Angie
indicated that they (Angie & Crystal) were given a directive to tell me to
leave for the day.  I asked, "leave for the day, for what reason?"  Angie
indicated because this gives you something to go home and think about
what they said.  I then said "for a PDA and a reprimand?" and they yes.  I
then "said I have work to do and I can stay here and finish up my work."
Angie looks at Crystal and then stated "NO!" "you have to leave and
there are no exceptions."  I then asked where did this come from? Angie
said don't worry about that, we were given a directive to tell you to
leave.  I then proceed to get up from my chair and Angie said oh, you for
got to tell her that she has to move by next week and Crystal said, oh
yes.  Crystal proceeds to tell me about the move and her phone rung.
She answered the phone and talked about 2 minutes.  After she hung up,
she waited a few seconds and I then said what about the move? Crystal
said oh yes, you have to move to Jeff's old office by next Thursday (May
9, 2019).  Crystal said we have made a selection on the seating
arrangements for the office and picked the top two and everyone will be
moving.  I said, "So when will the others be moving" and she said she
would be sending out an email the next week.  I then asked Crystal how

would you be sending an email when you will be at the PIP. She then responded it still will go out and will be moving as well. Angie then said so, you need to be out of your office by next Thursday and they would have James Dear to clean out Jeff's office and have it ready. I said ok and got up and proceeded to go to my office. Angie then said don't mention to Edward that we may do his PIP next Friday because she wanted to look at the one I gave her before she set up a date to meet. I said sure. I went to my office and began to check my emails to make sure I didn't need to respond back to an email before I left the office for the day, at the directive of Crystal and Angie. As I was checking my emails, Nicole Pressley walked in my office, and started talking to me. Within two minutes Angie Plunkett walked in my office, looked at me and said I been given a directive to come and walk you to the lobby/out the front door. She didn't say excuse me Nicole, can you give Sonia and I a minute. She said it right in front of Nicole and again these were Angie Plunkett words " I've been given a directive to come and walk you to the lobby and out the front door." She was talking loud and didn't care who heard her as she was trying to embarrass and humiliate me. I then said "you've been instructed to do what?" She then said, yes that's right...so just get your belongings and leave. I said who directed you to do that and when did this start? She responded back don't worry about all that get your things and let's go. I then said "I have to go down stairs and make changes on my insurance" because that's the day our insurance was taking place and I didn't have a chance because I was in meeting a with Crystal & Angie from10: 30 -12:05. She said I would walk you down stairs and then walk you back up to the lobby and out the door. I shut down my computer, grab my belongings and walked out my office door. She waited as I locked my door and as I proceeded to turn and walk off. Denise Gray-Hunt (Human Resource Director) was passing by and I asked her were the insurance people still here and she said no but I could do it online. Angie then said, ok lets go to the front door. She then walked me to lobby front door.

This behavior was not necessary by Angie Plunkett and Crystal Thompson. When I was in Crystal office they were trying to push me to say or do something because they kept striking at me. Then after leaving out of Crystal office Angie came around to my office in a rage and tried it again by being very loud, rude, humiliating and embarrassing me. This

type of behavior showed a very hostile work environment and harassment.

Regards,

Sonia Smith

**Sonia Smith**

| | |
|---|---|
| **From:** | Crystal Thompson |
| **Sent:** | Tuesday, November 27, 2018 12:03 PM |
| **To:** | Sonia Smith; Edward Williams |
| **Cc:** | Randall R. Saxton |
| **Subject:** | Contracts |

Edward,

To update you on what was done with the contracts while you were out:

- The HM plans did not have to go through the board as they were under the threshold so we are good to go on those. Please let Jana know. I don't recall if I have told her yet.
- The Atkins contracts came in and Sonia reviewed them. Atkins did not win on price but Clayton said they will be disqualified for not meeting the qualifications. I believe Sonia gave all that to Clayton.
- On the Mitigation Horne Contract – I was working with both Torri and Victoria on that one. I submitted items to them and they came back again with questions. Jana and I answered some of the questions but then Torri had concerns. The last we left it, Jana and I needed to call her to discuss and get that one finalized. It expires 2/28 so to be sure we get it on the January agenda, please put that one on top of your list with Atkins to handle.

Please keep me posted where we are on the Horne contract increase. I am holding a PO to approve once it gets increased. We do not have enough funds left on the contract to make the payment I am holding. Torri said the math did not add up so we processed one PO and I am holding the other until the amount is increased. Please work with Jana to get that one handled as soon as possible.

Thanks,
Crystal



**Crystal Thompson**
Director, Office of Support Services
cthompson@mema.ms.gov
Office: 601-933-6603
Cell: 601-946-6844




*Click Logos Below to Stay Connected with Us:*

*"Preparing for Tomorrow's Disasters Today"*



1



### STATE OF MISSISSIPPI
PHIL BRYANT, GOVERNOR

### MISSISSIPPI EMERGENCY MANAGEMENT AGENCY

GREGORY S. MICHEL
EXECUTIVE DIRECTOR

June 20, 2019

Sonia Smith
207 Laurel Oak Cove
Brandon, MS 39047

*Via US Mail*
### ADMINISTRATIVE LEAVE UPDATE

Dear Sonia Smith,

This letter is to update you on the process of your grievance response received June 11, 2019. I have received your letter/response, and I am currently investigating the issues described in your statement. Due to circumstances outside the control of MEMA, we are also working to respond and recovery from five separate Severe Weather, Tornadoes, and Flooding Events. These events have caused a delay in reviewing all information provided and submitting a response to your grievance.

I want to assure you that I am working on your grievance and will dedicate the time necessary to review all the issues before submitting my final response. MEMA will continue your administrative paid leave during this process. All of your benefits, pay, leave earnings will remain in place during this process.

If you have any questions concerning this process, pay or benefits, please contact Ms. Denise Gray-Hunt at 601-933-6391.

Sincerely,

Stephen C. McCraney
Agency Designated Representative

pc:   Human Resources

POST OFFICE BOX 5644 • PEARL, MISSISSIPPI 39288-5644 • PHONE: 601-933-MEMA
EMERGENCY 1-800-222-6362 (24 HOUR)
TDD 1-800-445-6362

Sonia Smith <soniami@comcast.net>                                    7/17/2019 3:15 PM

Grievance

To smccraney@mema.ms.gov • dhunt@mema.ms.gov


Good Afternoon-


In regards to the grievance, I have not received your response as of today July 17, 2019, in regards
to your letter submitted on June 20, 2019.  I am expecting to receive a response from you by Monday
July 22, 2019.


Thanks,


Sonia Smith





**STATE OF MISSISSIPPI**
PHIL BRYANT, GOVERNOR

**MISSISSIPPI EMERGENCY MANAGEMENT AGENCY**

GREGORY S. MICHEL
EXECUTIVE DIRECTOR

July 17, 2019

Sonia Smith
207 Laurel Oak Cove
Brandon, MS 39047

RE:      Final Decision on Disciplinary Action

Dear Ms. Sonia Smith,

In the Pre-Disciplinary Conference Notice dated May 22, 2019, you were advised of your right to respond to certain allegations made against you.   You emailed your written response to the Agency. After considering your response, it is my decision that your employment with the Mississippi Emergency Management Agency is terminated effective July 17, 2019, for the following reasons, as previously outlined in the Pre-Disciplinary Conference Notice:

On May 6, 2019, Ms. Crystal Thompson received an e-mail notification on the agency e-mail system that you had forwarded a meeting invitation to Sonsmi@comcast.net. She notified the IT staff and asked if there was a way to see if other state information was sent to her personal e-mail.

May 10, 2019, at approximately 9:30 am, I was notified by IT staff that you had been sending e-mails from your work e-mail (ssmith@mema.ms.gov) to your personal e-mail account (sonsmi@comcast.net). This activity was documented from May 6, 2019, to May 9, 2019. Approximately one hundred and eleven (111) e-mails were documented as being sent during these 4 days. At approximately 9:29 am, I directed the IT staff to lockdown and seize your work computer.

Given the fact that you forwarded Agency-specific business information to your personal e-mail for over four days, the Agency took preventive and protective measures to check your computer and e-mail for issues to confirm or deny that any documents, data, and other information had been compromised. After an evaluation, it was confirmed that you sent multiple state documents to your



Sonia Smith
July 17, 2019
Page 2

personal e-mail account over a period of 4 days. These emails included MEMA grant information as well as personal financial information. You originally had access to confidential Agency information, including but not limited to personal information, payroll records, and vendor information. This is in direct violation of Mississippi State Employee Handbook, Chapter 5.12, EMPLOYEE USE OF STATE PROPERTY. Forwarding Agency-specific business information and personal information constitutes unauthorized use or misuse of State property or records; an act or acts that to continue the employee in the assigned position could constitute negligence regarding the Agency's duties to the public or other State employees; and is a breach of Agency security and confidentiality.

These violations constitute Group Three offenses in the following areas:

Number 12, *"the unauthorized use or misuse of State property or records;"* Number 14, *"an act or acts of conduct occurring on or off the job which are plainly related to job performance and are of such nature that to continue the employee in the assigned position could constitute negligence in regard to the agency's duties to the public or to other State employees;"* and Number 18, *"a breach of Agency security or confidentiality;"* as stipulated in the Mississippi State Employee Handbook, § 7.1.

I also informed you I would consider the two Group Three Offenses and Performance Improvement Plan you received on May 3, 2019, in this due process meeting.

The Group Three offenses on May 3, 2019, were as follows:

1. On September 28, 2018, a directive was given to check on the Atkins Contract to be sure it was reviewed and submitted to the PPRB timely as the contract expired on 12/31/2018. On November 29, 2019, in an Accounting and Finance Action Items and Review meeting, a directive was issued to "take ownership of the items and issues brought to you and see them to closure." On April 18, 2019, Executive Management was informed that the Atkins contract would be delayed another month to June 2019. At that point, the task was removed from Ms. Smith's purview and given to her supervisor, Ms. Plunkett to oversee.

Your lack of follow-through and management of the Agency's contracts and Contracts Manager, Specifically beginning with a directive to review and follow up of the Atkins contract beginning on September 28, 2018 and following through to the denial of the contract to be presented to the PPRB for May 2019, constitutes a violation of a Group Three, Number 14, "an act or acts of conduct occurring on or off the job which are plainly related to job performance and are of such nature that to continue the employee in the assigned position could constitute negligence

Sonia Smith
July 17, 2019
Page 3

in regard to the agency's duties to the public or to other State employees;" as
stipulated in the Mississippi State Employee Handbook §7.1.

2.    On November 29, 2018, in an Accounting and Finance Action Items and
Review meeting, a directive was issued to "review and monitor Step 7 and Step 8
in MB3.  Be prepared to answer questions on the status of any Purchase Order
document or payment." On March 19, 2019, you were given a directive to follow
up with Step 8 as a budget report, and financial update would be given to the
Executive.

On April 8, 2019, a directive was given to clean up MB3 Step 7 & 8 so an
accurate accounting report on cash available could be provided to the Executive
Director.

Upon the review of the most recent spreadsheet submitted on April 26, 2019,
multiple deficiencies were noted.   If this report were used to provide a
recommendation to the Executive Director, the general funds' availability would
be off by a minimum of $21,000.

Providing an accurate report of outstanding purchase requisitions and purchase
orders is imperative in order for Executive management to make decisions and
provide guidance to the Executive Director regarding year-end funding and
effective execution of State funding.

Your lack of management, ensuring that purchase requisitions and purchase
orders are followed through to completion provides inaccurate information to
management.  The oversight can and has caused the Agency to receive collection
letters from vendors and can cause the Agency to fall out of compliance with the
cash management agreement between the State of Mississippi and FEMA.  These
acts constitute a violation of a Group Three, Number 14, "an act or acts of
conduct occurring on or off the job which are plainly related to job performance
and are of such nature that to continue the employee in the assigned position
could constitute negligence in regard to the agency's duties to the public or to
other State employees;" as stipulated in the Mississippi State Employee
Handbook §7.1.

Your actions constitute a Group Three, Number 12,  *"the unauthorized use or misuse of State
property or records;"* Number 14, *"an act or acts of conduct occurring on or off the job which
are plainly related to job performance and are of such nature that to continue the employee in
the assigned position could constitute negligence in regard to the agency's duties to the public or
to other State employees;"* and Number 18, *"a breach of Agency security or confidentiality;"* as
stipulated in Chapter 7.1 of the Mississippi State Employee Handbook.  The Mississippi State

Sonia Smith
July 17, 2019
Page 4

Employee Handbook states, "*commission of one Group Three offense may be disciplined by the agency with a written reprimand and/or may result in suspension without pay for up to thirty (30) working days, demotion or dismissal.*" Mississippi State Employee Handbook, Chapter 7.1.

Please refer to your Mississippi State Employee Handbook Chapter 9 and/or *http://www.mspb.ms.gov/employee-appeals-board.aspx* for further information concerning your right to appeal this decision to the Mississippi Employee Appeals Board.

A copy of this Termination Notice will be placed in your personnel file. Without prior approval of this office, you are not permitted to enter any agency facilities. Please coordinate with Human Resources to turn in any equipment issued to you at 601-933-6362.

Sincerely,

Stephen McCraney
Agency Designee

c:      Human Resources

FILED

JUL 23 2019

EMPLOYEE APPEALS BOARD

## NOTICE OF APPEAL BEFORE
## THE MISSISSIPPI EMPLOYEE APPEALS BOARD

| | |
|---|---|
| Sonia Smith | **APPELLANT** |
| **VERSUS** | NO.  19-030 |
| Mississippi Emergency Management Agency | **RESPONDENT** |

**NOTE:**  Supplemental pages may be attached if needed.
Do not write on the reverse sides of this form or any supplemental page.

1. Name, mailing address, telephone number, and email address of Appellant:

Sonia Smith
207 Laurel Oak Cove
Brandon, MS 39047
(601) 594-4868   email address: sonsmi@comcast.net

2. Name, mailing address, telephone number and email address of Appellant's attorney, if any:

3. Appellant's employing agency (if different from Respondent):

4. Appellant's relevant employment information:
   a) work station (town, city, county) and organizational location (bureau, division, branch) within employing agency (if applicable):
   b) immediate supervisor (if applicable):
   c) job title (if applicable):
   d) date of hire with employing agency (if applicable):
   e) date of termination from employing agency (if applicable):
   f) Statement of the facts, in sufficient detail, upon which the appeal is taken, including the effective date of any alleged grievable action, and why such action is in error:

a) Pearl, Rankin County
b) Angie Plunkett as of 4/1/19... Prior to 4/1/19 Crystal Thompson from 12/1/17-3/31/18
c) Accounting-Finance Director
d) April 1, 2015
e) July 17, 2019
f ) Please see attachment in reference to response



5.  **Appellant's Statement of the final action taken and/or decision made as a result of the agency-level grievance proceedings, including the effective date of such final action:**

I disagree with the final decision letter received from Mr. Stephen McCraney on July 20, 2019. In my response statement sent to Mr. McCraney on June 11, 2019 I gave clear explanations of my response to his findings and stated that his responses were false and asked him to provide the information of what I was accused of. They haven't provided that information and I am moving forward to the next level of filing an appeal to have this grievance investigated.

6.  **Appellant's Statement of relief requested:**

I would like my job to be reinstated along with all benefits, insurance, time, etc.

7.  **List of any documents, exhibits and/or supplemental pages which Appellant has attached to this Notice of Appeal:**

Please see attached documents of grievance from begining to end.

| Signature of Appellant: | *Sonia Smith* |
|---|---|
| Date: | July 22, 2019 |

**NOTE:** To file an appeal, the Appellant should fill out and return this form to the Mississippi Employee Appeals Board, 210 East Capitol Street, Suite 800, Jackson, MS 39201. The Notice of Appeal must be accompanied by copies of all documents generated by the agency-level grievance proceedings, which took place prior to the filing of the appeal. A fee of one hundred dollars ($100.00) in the form of a cashier's check, bona fide attorney's check, or money order made payable to the Mississippi Employee Appeals Board must be filed by the Appellant with the Notice of Appeal. Cash or personal checks will not be accepted. The rules governing appeals are found in Section 10.7 of the Mississippi State Personnel Board Policy and Procedures Manual. See also Mississippi Code Annotated §§ 25-9-101 through 25-9-151 and §§ 25-9-301 through 25-9-305.